IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**WAYNE ALLEN STOKER, JR.**                                               **MOVANT**

**v.**                                                                                      **No. 3:10CR30-NBB-RP**

**UNITED STATES OF AMERICA**                                               **RESPONDENT**

**MEMORANDUM OPINION**

This matter comes before the court on the motion of Wayne Allen Stoker to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The government has responded to the motion, and the matter is ripe for resolution. For the reasons set forth below, the instant motion to vacate, set aside, or correct sentence will be dismissed as untimely filed and under the doctrine of procedural default.

*Habeas Corpus* **Relief Under 28 U.S.C. § 2255**

The writ of *habeas corpus*, a challenge to the legal authority under which a person may be detained, is ancient. Duker, The English Origins of the Writ of Habeas Corpus: A Peculiar Path to Fame, 53 N.Y.U.L.Rev. 983 (1978); Glass, Historical Aspects of Habeas Corpus, 9 St. John's L.Rev. 55 (1934). It is "perhaps the most important writ known to the constitutional law of England," *Secretary of State for Home Affairs v. O'Brien*, A.C. 603, 609 (1923), and it is equally significant in the United States. Article I, § 9, of the Constitution ensures that the right of the writ of *habeas corpus* shall not be suspended, except when, in the case of rebellion or invasion, public safety may require it. *Habeas Corpus*, 20 Fed. Prac. & Proc. Deskbook § 56. Its use by the federal courts was authorized in Section 14 of the Judiciary Act of 1789. *Habeas corpus* principles developed over time in both English and American common law have since been codified:

> The statutory provisions on *habeas corpus* appear as sections 2241 to 2255 of the 1948 Judicial Code. The recodification of that year set out important procedural limitations and additional procedural changes were added in 1966. The scope of the writ, insofar as the statutory language is concerned, remained essentially the same, however, until 1996, when Congress enacted the Antiterrorism and Effective Death Penalty Act, placing severe restrictions on the issuance of the writ for state prisoners and setting out special, new *habeas corpus* procedures for capital cases. The changes made by the 1996 legislation are the end product of decades of debate about *habeas corpus*.

*Id*.

## Section 2255 Proceedings

Section 28 U.S.C. § 2255 permits an inmate serving a sentence after conviction of a federal crime "to move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). As with the writ of *habeas corpus*, *see* 28 U.S.C. §§ 2241, 2254, a § 2255 motion sets forth only four bases on which a motion may be made: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Thus, a prisoner must claim either a constitutional violation or want of subject matter jurisdiction to invoke 28 U.S.C. § 2255. In the absence of constitutional or jurisdictional defects, a federal prisoner may invoke § 2255 only if the error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio,* 442 U.S. 178, 185 (1979).

The district court must first conduct a preliminary review of a section 2255 motion, and "[i]f it plainly appears from the motion, any attached exhibits, and the record of the prior proceeding that the moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing Section 2255 Proceedings, Rule 4(b). If the motion raises a non-frivolous claim to relief, the court must order the Government to file a response or to take other appropriate action. *Id.* The judge may then require

the parties to expand the record as necessary and, if good cause is shown, authorize limited discovery. *Rules Governing Section 2255 Proceedings,* Rules 6–7.

After reviewing the government's answer, any transcripts and records of prior proceedings, and any supplementary materials submitted by the parties, the court must decide whether an evidentiary hearing is warranted. *Rules Governing Section 2255 Proceedings,* Rule 8. Under the statute, an evidentiary hearing must be held unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). However, the court need not hold an evidentiary hearing if the prisoner fails to produce "independent indicia of the likely merit of [his] allegations." *United States v. Edwards,* 442 F.3d 258, 264 (5th Cir. 2006) (quoting *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998)).

Ultimately, the petitioner bears the burden of establishing his claims of error by a preponderance of the evidence. *See Wright v. United States,* 624 F.2d 557, 558 (5th Cir. 1980). For certain "structural" errors, relief follows automatically once the error is proved. *See Burgess v. Dretke,* 350 F.3d 461, 472 (5th Cir. 2003). For other errors at the trial court level, the court may grant relief only if the error "had substantial and injurious effect or influence" in determining the outcome of the case. *Brecht v. Abrahmson,* 507 U.S. 619, 637 (1993); *see also United States v. Chavez,* 193 F.3d 375, 379 (5th Cir. 1999) (applying *Brecht's* harmless error standard in a § 2255 proceeding). If the court finds that the prisoner is entitled to relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

## Procedural Posture

On February 17, 2009, a federal grand jury returned an Indictment against Wayne Allen Stoker charging him with one count of arson in violation of Title 18, United States Code, Section 844(i). (See Indictment, Doc. # 1). On August 23, 2010, Stoker pled guilty to the arson, and the court accepted his guilty plea. On March 28, 2011, this Court sentenced Stoker to 108 months imprisonment to be followed by three years of supervised release and to pay $211,367.50 in restitution. Stoker did not pursue a direct appeal. Following his conviction for the arson of the Dam Bar, Stoker was indicted again for threatening a witness in his arson case. *See United States v. Wayne Allen Stoker*, Case No. 3:11CR0069-MPM. Stoker went to trial in the threat case and was convicted. He appealed his conviction and was subsequently re-sentenced. Following his appeal, Stoker filed a § 2255 Petition which was denied. *See United States v. Stoker*, Case No. 3:11CR0069-MPM, Memorandum Opinion and Order (July 24, 2014), Doc. # 67).

In the present case, Stoker did not pursue a direct appeal. On January 8, 2017, Mr. Stoker mailed a letter to the Court claiming, among other things, that the court improperly applied a hate crime enhancement in calculating his guideline range. The court construed the letter as a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 and ordered the Government to respond.

## Facts

On August 23, 2010, Stoker pled guilty to willfully and maliciously setting fire to a place of business known as "The Dam Bar" outside of Grenada, Mississippi in violation of Title 18,

United States Code, Section 844(i). In agreeing to his factual basis, Stoker made the following admissions:

On the night of Friday, February 20, 2009, Stoker went to "The Dam Bar" located at 5489 Scenic Loop 333, Coffeeville, MS 38922 in Grenada County, Mississippi. (Change of Plea Transcript, p. 11) (Attached as "Exhibit A"). After Stoker had been at the bar for a couple of hours, two African-American men entered the bar and sat down to have a drink. *Id.* Stoker became irate that the two black gentlemen entered the bar and began yelling profanity-laced racial slurs directed at them. Stoker shouted, "We don't allow niggers in the bar" and "You have got to get these niggers out of here." *Id.* Stoker caused such a scene that the owner of the Dam Bar, Dennis Hancock, had to physically remove him from the bar. *Id.* As he was being removed from the bar, Stoker threatened to burn down the bar and continued to shout profanity and racial slurs. *Id.* Stoker was heard in the parking lot shouting, "niggers are in the bar trying to fuck white girls." *Id.* Stoker yelled, "I will burn this mother fucker down." *Id.* In the early morning hours of Saturday, February 21, 2009, Stoker returned to The Dam Bar and intentionally started the fire that eventually burned down the bar. *Id.*

Following Stoker's guilty plea, the United States Probation Service prepared its initial presentence report ("PSR"). The Probation Service computed Stoker's base offense level at twenty-four (24). PSR ¶ 23. Stoker received a three (3) level increase because the offense was a hate crime, a two (2) level increase for obstruction of justice, and a three (3) level decrease for acceptance of responsibility, for a total offense level of twenty-six (26). PSR ¶¶ 25, 27, 29-30. In the criminal history category, Stoker received three (3) points for a previous arson conviction in 2004, one (1) point for a second-offense DUI conviction in 2004, and one (1) point for a

possession of marijuana conviction in 1999. PSR ¶¶ 35-66). The Probation Service added two (2) criminal history points because at the time the instant offense was committed, Stoker was on probation for his previous arson conviction. PSR ¶ 67. Thus, Stoker had a total of seven (7) criminal history points, which established a criminal history category of IV. (PSR ¶ 68). On March 28, 2011, the court sentenced Stoker to a term of imprisonment of 108 months for the arson of The Dam Bar. He then filed a motion to vacate sentence under 28 U.S.C. § 2255, in which he claims that he should not have received the three-point hate crime enhancement.

## The Movant's Claim Is Barred By the One-Year Limitations Period

Motions to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 are subject to a one-year limitations period:

> (f) A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on this the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). In this case, subsection (1) applies; the limitations period starts to run from "the date on which the judgment of conviction becomes final." The Fifth Circuit held that, as with the *habeas corpus* challenge to a state conviction under 28 U.S.C. § 2254, the limitations period to challenge to a federal conviction under 28 U.S.C. § 2255 "becomes final generally upon the

expiration of direct review or the time for seeking direct review." *United States v. Plascencia*, 537 F.3d 385, 388 (5th Cir. 2008). Thus:

> [f]or the purpose of starting the clock on § 2255's one-year limitation period . . . a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction.

*Clay v. United States*, 537 U.S. 522, 525, 123 S. Ct. 1072, 1074, 155 L. Ed. 2d 88 (2003). Finally, when a criminal defendant chooses not to pursue a direct appeal of his conviction, that conviction "becomes final for purposes of § 2255 upon the expiration of the [14]-day period for filing a direct appeal." *United States v. Plascencia*, 537 F.3d 385, 388 (5th Cir. 2008).

Mr. Stoker's change of plea hearing was held on August 23, 2010. The court accepted his plea on that day. He was sentenced on March 28, 2011; thus, his conviction became final fourteen days later on April 11, 2011. Stoker mailed the instant § 2255 motion to this court on January 8, 2017, and it was filed on February 15, 2017, almost six years after his sentencing. Therefore, the one-year statute of limitations expired nearly five years before Stoker filed the instant § 2255 motion. As such, Stoker's claim that he should not have received the hate crime enhancement is untimely filed under 28 U.S.C. § 2255(f).

**The Doctrines of Procedural Default and Procedural Bar**

Mr. Stoker's claim is also prohibited under the doctrine of procedural default, as he failed to pursue a direct appeal and raise them before the Fifth Circuit Court of Appeals. A defendant may not raise issues in his § 2255 motion, other than ineffective assistance of counsel, that he could have raised on direct appeal. *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). This doctrine is known as *procedural default*. Similarly, if an inmate has raised an issue on direct appeal, and the Fifth Circuit decided he issue against him, the court may not consider them on collateral review: "[I]ssues raised and disposed of in a previous appeal from an original judgment of

conviction are not considered in § 2255 Motions." *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986). This doctrine is known as *procedural bar*.

### Cause and Prejudice – and Fundamental Miscarriage of Justice – As Ways to Overcome Procedural Bar

Whether a § 2255 movant's claims are procedurally defaulted or procedurally barred, the way he may overcome these barriers is the same. First, he may overcome the procedural default or bar by showing cause for it – and actual prejudice from its application. To show cause, a petitioner must prove that an external impediment (one that could not be attributed to him) existed to prevent him from raising and discussing the claims as grounds for relief on direct appeal. *See United States v. Flores*, 981 F.2d 231 (5th Cir. 1993) (in the § 2254 context).[1] To establish prejudice, a movant must show that, but for the alleged error, the outcome of the proceeding would have been different. *Pickney v. Cain*, 337 F.3d 542 (5th Cir. 2003). Even if a movant fails to establish cause for his default and prejudice from its application, he may still overcome a procedural default or bar by showing that application of the bar would result in a fundamental miscarriage of justice. To show that such a miscarriage of justice would occur, a petitioner must prove that, "as a factual matter, that he did not commit the crime of conviction." *Fairman v. Anderson,* 188 F.3d 635, 644 (5th Cir. 1999) (citing *Ward v. Cain,* 53 F.3d 106, 108 (5th Cir. 1995)). Further, he must support his allegations with new, reliable

---

[1] The doctrines of procedural default and procedural bar operate in a similar manner, whether during a collateral challenge to a state conviction under 28 U.S.C. § 2254, or to a federal conviction under 28 U.S.C. § 2255:

> The procedural default doctrine applies to state prisoners seeking relief under 28 U.S.C.A. § 2254 and federal prisoners seeking relief under 28 U.S.C.A. § 2255.

§ 24:3. General principles, Postconviction Remedies § 24:3. Thus, the court will cite authority in both contexts on this issue.

evidence – that was not presented at trial – and must show that it was "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Fairman,* 188 F.3d at 644 (citations omitted).

Mr. Stoker did not pursue a direct appeal; as such, he clearly did not raise the issue in the present motion before the Fifth Circuit. He has not shown cause for his failure to pursue and appeal; nor has he shown that he would suffer prejudice if the court applied the default in this case. As such, he cannot overcome the procedural default in this way. Further, he has not shown that he did not commit the crime of his conviction; hence, he may not avail himself of the fundamental miscarriage of justice exception to the procedural default rule. For these reasons, the instant motion to vacate, set aside, or correct sentence must be dismissed under the doctrine of procedural default.

## Conclusion

In sum, the instant motion to vacate, set aside, or correct sentence will be denied as untimely filed and as procedurally defaulted. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 26th day of March, 2020.

/s/ Neal Biggers
NEAL B. BIGGERS
SENIOR U. S. DISTRICT JUDGE